IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

FRANK EARHEART TATE,                 :
                                     :
        Petitioner.                  :
                                     :
vs.                                  :         CIVIL ACTION 12-0291-CG-M
                                     :
GARY HETZEL,                         :
                                     :
        Respondent.                  :


REPORT AND RECOMMENDATION

This is an action under 28 U.S.C. § 2254 by an Alabama inmate which was referred for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Local Rule 72.2(c)(4), and Rule 8 of the Rules Governing Section 2254 Cases.  This action is now ready for consideration.  The state record is adequate to determine Petitioner's claims; no federal evidentiary hearing is required.  It is recommended that the habeas petition be denied, that this action be dismissed, and that judgment be entered in favor of Respondent Gary Hetzel and against Petitioner Frank Earheart Tate.  It is further recommended that any certificate of appealability filed by Petition be denied as he is not entitled to appeal *in forma pauperis*.

Petitioner was convicted of two counts of first degree rape

1

in the Circuit Court of Dallas County on September 19, 2006 for which he received life sentences, on each count, in the state penitentiary (Doc. 1, p. 2; *cf.* Doc. 13, p. 3).  Appeal was made to the Court of Criminal Appeals of Alabama which affirmed the convictions and sentences (Doc. 13, Exhibit D).  The Alabama Supreme Court denied Tate's petition for *certiorari* (Doc. 13, Exhibit F), following which the Alabama Court of Criminal Appeals, on December 7, 2007, issued a certificate of judgment (Doc. 13, Exhibits F, G).  Petitioner did not seek review in the United States Supreme Court (*see* Doc. 13, p. 8).

Tate filed a State Rule 32 petition in the Dallas County Circuit Court on December 5, 2008 that was denied on July 13, 2011 (Doc. 13, Exhibit H, pp. 5-10, 19).  On March 9, 2012, the Alabama Court of Criminal Appeals affirmed the denial of the petition (Doc. 13, Exhibit K).  The certificate of judgment was entered on March 28, 2012 (Doc. 13, Exhibit L).

Petitioner filed a complaint with this Court on April 27, 2012, raising the following claims:  (1) The trial court allowed the State to introduce improper evidence at his trial; (2) there was insufficient evidence to convict him on the two charges; (3) in his Rule 32 petition, the trial court abused its discretion in ruling without conducting a hearing; and (4) Tate's trial

2

counsel rendered ineffective assistance (Doc. 1).

In answering the Complaint, Respondent has acknowledged that Petitioner timely filed this action within the limitation provisions of 28 U.S.C. § 2244(d) of the Anti-Terrorism and Effective Death Penalty Act of 1996 (Doc. 13, p. 8).  However, Respondent has asserted that Tate's third and fourth claims are procedurally defaulted because he did not seek *certiorari* in the Alabama Supreme Court after the Alabama Court of Criminal Appeals affirmed the denial of the petition in which those two claims had been raised (Doc. 13, pp. 9-10).

The Court notes that Petitioner has made no mention of seeking rehearing of the dismissal of his appeal by the Alabama Court of Criminal Appeals or *certiorari* in the Alabama Supreme Court following the denial of his Rule 32 petition on appeal (Doc. 1).  Tate has only stated that such an effort would have been, essentially, a matter of form over substance (Doc. 15).

Alabama law clearly provided Tate the opportunity to seek review of a Rule 32 petition dismissal in a rehearing by the Alabama Court of Criminal Appeals.  Ala.R.App.P. 40(a).  The fourteen-day time period in which Tate could have pursued rehearing has passed.  Ala.R.App.P. 40(c).  Furthermore, Alabama law allowed Petitioner to seek *certiorari* in the Alabama Supreme

Court for the review of the denial of rehearing by the Alabama Court of Criminal Appeals.  Ala.R.App.P. 39(a); *see also, e.g., Ex parte Powell*, 674 So.2d 1258 (Ala. 1995) (Alabama Supreme Court granted *certiorari* to review Alabama Court of Criminal Appeals' determination that appellant's Rule 32 petition was untimely filed).  The fourteen-day time period in which Petitioner could have pursued this avenue of relief has also passed.  *See* Ala.R.App.P. 39(c).  Because Petitioner did not pursue his claims in a timely fashion before the two Alabama appellate courts, they are procedurally defaulted under *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) ("[W]e conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process").

However, all chance of federal review is not precluded. The Eleventh Circuit Court of Appeals, in addressing the review of these claims, has stated the following:

> Under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) and its progeny, noncompliance with a state procedural rule generally precludes federal habeas corpus review of all claims as to which noncompliance with the procedural rule is an adequate ground under state law to

4

> deny review.  If a petitioner can
> demonstrate both cause for his noncompliance
> and actual prejudice resulting therefrom,
> however, a federal court can review his
> claims.

*Booker v. Wainwright*, 764 F.2d 1371, 1376 (11th Cir.) (citations omitted), *cert. denied*, 474 U.S. 975 (1985).  A claimant can also avoid the procedural default bar if it can be shown that a failure to consider the claims will result in a fundamental miscarriage of justice.  *Engle v. Isaac*, 456 U.S. 107, 135 (1982); *see also Murray v. Carrier*, 477 U.S. 478, 496 (1986).

In this action, Tate has demonstrated neither cause nor prejudice for failing to raise these two claims in a timely manner in the State courts.  Furthermore, Petitioner has not shown that this Court's failure to discuss the merit of these two claims will result in a fundamental miscarriage of justice being visited upon him.  Therefore, the Court considers claims three and four in this Court to be procedurally defaulted and the Court will not address their merit.

Tate first claims that the trial court allowed the State to introduce improper evidence at his trial.  More specifically, Petitioner asserts that evidence was allowed for which he had "never been charged, tried, or convicted" (Doc. 1, p. 14).

5

The federal courts, in evaluating habeas petitions, exercise only limited review of state evidentiary objections. *Amadeo v. Kemp*, 816 F.2d 1502, 1504 (11th Cir. 1987), *rev'd on other grounds sub nom. Amadeo v. Zant*, 486 U.S. 214 (1988).  For a claim of this kind to be cognizable, the defendant must have been deprived of fundamental fairness.  *Jameson v. Wainwright*, 719 F.2d 1125, 1127 (11th Cir. 1983) (per curiam), *cert. denied*, 466 U.S. 975 (1984).  To determine if fundamental fairness has been denied, a federal court decides whether the evidence is "material in the sense of a crucial, critical, highly significant factor."  *Hills v. Henderson*, 529 F.2d 397, 401 (5th Cir.),[1] *cert denied sub nom. Hills v. Maggio*, 429 U.S. 850 (1976).

The Court notes that Tate raised this claim in the direct appeal of his convictions.  The Alabama Court of Criminal Appeals found no merit in it (Doc. 13, Exhibit D).  Though lengthy, the full text of the discussion of that claim will be set out herein.

The appellant argues the trial court erred in allowing the State to present

---

[1]The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

evidence of two collateral offenses, rape
and sexual assault, in violation of Rule
404(b), Ala.R.Evid.  More particularly, he
argues the evidence did not fall within any
of the recognized exceptions to the rule,
and was presented for the sole purpose of
introducing inappropriate character
evidence.

During its case-in-chief, the State
called victim, Emmaline Steele, who
testified that she knew the appellant
through her sister, Diane Brewer.  She
denied that she had ever had a consensual
sexual relationship with the appellant.  She
testified that she had previously considered
the appellant a friend because he had dated
her sister, and that she had allowed him to
stay at her home on occasion as a favor, but
never thought that "it was going to come to
this."  On the night of June 24, 2001, she
had stated that she would allow the
appellant to stay at her home, but felt
uneasy because of sexual advances he had
recently made toward her, and therefore
would not allow him inside.  The appellant
threatened her and told her that if she did
not let him inside, he was going to break
down the door.  Eventually, the appellant
pulled off her screen door, kicked in the
wooden door, knocked the victim to her bed,
and began violently choking her.  Ms. Steele
testified that she struggled against him,
but was not strong enough to fight him off.
She testified that the appellant then forced
her to have sexual intercourse with him.

On cross-examination defense counsel
repeatedly questioned Ms. Steele regarding
her level of intoxication on the night of
the rape, and whether she was so intoxicated
that she could not clearly identify the
appellant as the rapist.

Next, the State presented the testimony
of victim, Julia Barnes, who testified that
she knew the appellant, but that she knew

him by the name "Clinton," rather than
"Tate."  In December 2001, she had been at a
party at a "shot house," and the appellant
asked if he could walk her home.  He came
inside her house and they sat and talked for
a while.  She testified that the appellant
then shut her door, came back into the room,
grabbed her neck, threw her on the bed, and
began choking her.  He continued choking her
until he unzipped her pants and forcibly
raped her.  She testified that she did not
consent to sexual relations with the
appellant.

On cross-examination, Ms. Barnes
acknowledged that she had been at the house
of a bootlegger, and had bought two beers.
Defense counsel questioned Ms. Barnes about
her degree of intoxication on the night of
the rape, and whether she had, in fact,
identified another man by the name of
Clinton Johnson, as the rapist.  The record
indicates that defense counsel pointed to
the appellant and asked Ms. Barnes, "Do you
know that man?"  She responded, "He favor
him – they said his name, Clinton."  Upon
further questioning by defense counsel, the
victim was asked if it was possible that it
was a different man named "Clinton," rather
than the appellant, who raped her.  Ms.
Barnes replied, "That was the name they give
me."  Ms. Barnes testified that she had
identified the appellant from a photographic
line-up, and proceeded to identify him in
the courtroom, where she commented that he
had "put on a little weight" since the rape.

The State elicited the testimony of
Chief Robert Jacobs, a retired Selma Police
Detective, and the investigating officer in
charge of the rape cases.  It was his
opinion that neither victim was so
intoxicated on the night of the offenses
that they could not respond to his questions
in a coherent manner.  On cross-examination,
defense counsel asked him about both

8

victims' levels of intoxication, and about a
report of an unidentified man in the area at
the time of the rape of Ms. Steele.  He
questioned Chief Jacobs as to whether the
unidentified male who walked her home, could
have also raped her.

Subsequent to defense counsel's
extensive questioning on the issue of
identity, particularly misidentification,
the State informed the trial court of its
intent to call two additional witnesses to
offer 404(b) evidence for the purpose of
identity, as well as rebutting the
appellant's consent argument.  Defense
counsel responded that identity was not at
issue because each of the alleged victims in
this case testified and positively
identified the appellant as the rapist.
Additionally, defense counsel argued that
the appellant had conceded identity, by
acknowledging that he had had consensual sex
with both women.  Defense counsel further
argued that consent was not an exception to
404(b) evidence.

In response, the state argued that
defense counsel had interjected the issue of
identity during his extensive cross-
examination of both victims, by suggesting
that both victims had misidentified the
appellant as the rapist.  Additionally, the
State argued that defense counsel continued
to make identity an issue in the case when
he questioned Chief Jacobs about the
victims' misidentification of the appellant
due to their alleged states of intoxication.
The State argued that because defense
counsel argued that it was someone else,
other than the appellant, who committed the
charged offense, he "opened the door" for
further evidence on the issue of identity.
Therefore, the State argued, it should be
allowed to introduce evidence of two prior
offenses, wherein the appellant befriended
the women and then "violently choked" them

9

into submission, prior to raping and
sexually assaulting them.

Evidence of a collateral sexual offense
is admissible for the purpose of showing
lack of consent in a rape case if the
evidence also fits within one of the
exceptions to the general rule of exclusion.
See Nail v. state, 629 So.2d 772 (Ala. Crim.
App. 1993); Jones v. State, 580 So.2d 97
(Ala. Crim. App. 1991).  In Alabama,
however, the common plan, scheme, or design
exception, one of the recognized exceptions
to the exclusionary rule, is narrowly
applied only when identity is actually at
issue.  See Campbell v. State, 718 So.2d 123
(Ala. Crim. App. 1997).

Here, it is clear that the appellant
was pursuing two lines of defense, by
presenting a primary defense that he had
consensual sexual intercourse with both
victims and, alternatively, by presenting a
second defense that both victims mistakenly
identified him as the rapist.  Because the
appellant suggested that someone else may
have committed the crimes, he made identity
an issue in the case.  Therefore, under the
facts of this case, the trial court did not
err in allowing the State to present
appropriate evidence on the issue of
identity.  The connection between the
charged offenses involving the victims and
those involving the prior collateral
offenses was sufficient to justify the
admission of the prior collateral acts.
Although there are distinctions between the
charged and uncharged offenses, in each
case, the appellant initially befriended
each of the victims, and then in a violent
attack, choked them into submission, prior
to raping one of them.  No error occurred in
the admission of the Rule 404(b) evidence.

(Doc. 13, Exhibit D, pp. 1-7).

After reviewing the Alabama Court of Criminal Appeals'
opinion on this claim, the Court finds that Tate has failed to
demonstrate that he was denied fundamental fairness under
*Jameson* and *Hill* in the admission of the evidence at trial
against him.  As noted by the appellate court, the door was
opened to this evidence when Petitioner/Defendant put into
question the identity of the attacker.  As the evidence was
admissible under State law, as found by the Alabama Court of
Criminal Appeals, this Court will not disturb that finding.

Tate has also claimed that there was insufficient evidence
to convict him on the two charges.  As support, Petitioner again
asserts that certain evidence should not have been admitted at
trial, going on to point to other evidence which questioned the
evidence put forward by the State (Doc. 1, p. 15).

It should be noted that this Court, on habeas review, does
not make an independent determination of whether Petitioner is
guilty or innocent.  The evidence was constitutionally adequate
if there was evidence presented at the trial from which a
reasonable trier of fact could find Petitioner guilty beyond a
reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307 (1979).
This Court further notes that all conflicts in the evidence are
resolved in favor of the prosecution.  *Id*.

11

In Alabama, "[a] person commits the crime of rape in the
first degree if [h]e or she engages in sexual intercourse with a
member of the opposite sex by forcible compulsion." Ala. Code §
13A-6-61(a)(1). The Court will now summarily review the
relevant trial evidence.

Emmaline Steele testified that she knew Tate through her
sister, Diane Brewer (Doc. 13, Exhibit A, Vol. 2, Tr. 52-72).[2]
Tate was never her boyfriend, they had never dated, and they had
never had a sexual relationship although he had tried to force
himself on her more than once. Steele thought of Tate as a
friend and had let him stay at her house as a favor. On the
night of June 24, 2001, she heard Tate, identified as the
Defendant at trial, on the front porch but she would not let him
inside. Tate punched the screen door open, kicked the wooden
door in, and came into her bedroom where she was sitting on the
bed in just her slip and panties; he knocked her on the bed and
started putting his hands on her before he began to choke her.
Steele hit Petitioner in the face, but she was not strong enough
to stop him. He choked her hard enough that her tongue was
coming out of her mouth; he also drug her around by the legs and

---

[2]The Court will reference all trial transcript testimony by the
numbered pages of the transcript itself, rather than to the page
numbers assigned by the Court's CMECF system.

caused a carpet burn on her knee.  Steele struggled with him and
told him no, but he overpowered her and forced her to have sex
with him.  Steele testified that Tate penetrated her.  She found
Tate's billfold on the floor the next morning after which she
was taken to the hospital and treated for her injuries.  She
also gave a report to the police.

Julia Barnes testified that one night in December 2001 she
had been at a friend's house and that a man walked her to her
home and came inside where they sat and talked; she did not
really know the man, but had been told that his name was Clinton
Johnson (Doc. 13, Exhibit A, Vol. 2, Tr. 72-91).  He later got
up, closed the back door, came back, grabbed Barnes, slung her
on the bed, grabbed her neck, and began choking her.  The man
then unzipped her pants and forcibly raped her.  Barnes went to
the hospital for treatment of her injuries, including bleeding
from her bottom.  The police later showed her some photos and
she picked the Defendant's photo out of the array.

Elizabeth Pendley testified that she is the administrator
of medical records at Vaughan Regional Hospital and that it is
her job to keep and maintain patient records (Doc. 13, Exhibit
A, Vol. 2, Tr. 91-98).  The Administrator identified certain
records, which had been within her care, in which Julia Barnes

had completed a form, on December 22, 2001, stating that she had been sexually assaulted vaginally; Pendley identified other hospital records signed by Emmaline Steele on June 24, 2001.

Robert Jacobs testified that he was a retired police officer with thirty years experience in law enforcement (Doc. 13, Exhibit A, Vol. 2, Tr. 102-35). Jacobs testified that he was on duty on June 24, 2001 as a lieutenant, in the investigative division of the Selma Police Department when he received a call to investigate a rape. He interviewed Emmaline Steele at the police station after she left the hospital; she exhibited physical markings around the neck and an injury to her knee. Jacobs took photos of her injuries that were published to the jury. The Investigator then went to Steele's home, noted some evidence of forced entry into the house, and took some photos. The victim identified Frank Tate as her rapist. Jacobs identified Tate by the billfold that had been left at the house.

Clarissa Cole testified that she had been an evidence technician with the Selma Police Department for four years (Doc. 13, Exhibit A, Vol. 2, Tr. 135-42). She identified one of the trial exhibits as Julia Barnes's bloody underwear taken from her the night she was raped.

Brian Wilson testified that he had been a forensic

14

scientist with the Alabama Department of Forensic Sciences for over six years and had been doing DNA analysis for over five years (Doc. 13, Exhibit A, Vol. 2, Tr. 177-78; Vol. 3, Tr. 179-93).  Wilson identified one of the trial exhibits as test results from a vaginal swab taken from Emmaline Steele that had sperm from Defendant Tate on it; the Scientist testified that the evidence gathered indicated a 1 in 7.41 trillion chance that the DNA belonged to someone other than Defendant.

Holli Spiers testified that she was a forensic scientist with the Alabama Department of Forensic Sciences and that she had been doing DNA analysis for over six years (Doc. 13, Exhibit A, Vol. 3, Tr. 193-201).  Spiers testified that she had performed DNA analysis on a sexual assault evidence kit taken from Julia Barnes and had excluded Clinton Johnson, who had been identified as a suspect, as a contributor of the semen; the evidence was identified as a match for Frank Tate.  Spiers testified that, statistically, there was a 1 in 3.42 quadrillion chance that the sample belonged to an African-American other than Tate.

Following the presentation of the evidence, the jury presented verdicts finding Tate guilty of first degree rape in the two counts against him (Doc. 13, Exhibit A, Vol. 3, Tr.

15

257).

This concludes the relevant evidence from trial.  The Court finds that the evidence was constitutionally adequate under Jackson.  In other words, there was evidence presented at the trial from which a reasonable trier of fact could find Petitioner guilty beyond a reasonable doubt.  Tate's claim otherwise is without merit.

In this action, Petitioner has raised four claims.  Two of those claims are procedurally defaulted while the other two are without merit.  Therefore, after reviewing all of the evidence of record, it is recommended that this habeas petition be denied, that this action be dismissed, and that judgment be entered in favor of Respondent Gary Hetzel and against Petitioner Frank Earheart Tate.

Furthermore, pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the undersigned recommends that a certificate of appealability (hereinafter *COA*) in this case be denied.  28 U.S.C. foll. § 2254, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant").  The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a

16

circuit justice or judge issues a COA.  28 U.S.C. § 2253(c)(1).
A COA may issue only where "the applicant has made a substantial
showing of the denial of a constitutional right."  28 U.S.C. §
2253(c)(2).  When the merits of a claim are reached, a COA
should issue only when the petitioner demonstrates "that
reasonable jurists would find the district court's assessment of
the constitutional claims debatable or wrong." *Slack v.
McDaniel*, 529 U.S. 473, 484 (2000).  Where a habeas petition is
being denied on procedural grounds, "a COA should issue [only]
when the prisoner shows . . . that jurists of reason would find
it debatable whether the petition states a valid claim of the
denial of a constitutional right and that jurists of reason
would find it debatable whether the district court was correct
in its procedural ruling." *Slack*, 529 U.S. at 484.

     In this action, as Tate did not pursue his third and fourth
claims in a timely fashion through the State judicial process, a
reasonable jurist could not conclude either that this Court is
in error in dismissing the instant petition or that he should be
allowed to proceed further.  *Slack* 529 U.S. at 484 ("Where a
plain procedural bar is present and the district court is
correct to invoke it to dispose of the case, a reasonable jurist
could not conclude either that the district court erred in

dismissing the petition or that the petitioner should be allowed to proceed further"). With regard to the first and second claims brought in this action, as the Court has found that Tate has failed to assert sufficient facts to support a claim of constitutional error, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. It is suggested that Tate will not be able to make that showing.

**CONCLUSION**

It is recommended that Petitioner's petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254, be denied. It is further recommended that any certificate of appealability filed by Petition be denied as he is not entitled to appeal *in forma pauperis*.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1. **Objection**. Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v.*

18

*Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within fourteen days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objection party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Transcript (applicable where proceedings tape recorded).**
Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

Done this 30th day of January, 2013.

s/BERT. W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE